*292 Curia, por
O’Neall, J.
In general, a wrong, to be punishable by indictment, must in some way affect the public. A mere private injury to the civil rights of a member of society is uot in general indictable,, unless it also includes a public wrong. The deprivation of one of personal property, when not done feloniously, is remedied by action at the suit of the party aggrieved ; and so universal is said to be this remedy, that theie cannot be a wrong without its legal means of redress. It is possible, when the rights of the State are alone affected by a wrong, that the injury maybe redressed by indictment, or information. In the case of the State vs. Arledge and Gaither, 1 Bail. 551, it was held that an information for an intrusion on the lands of the State, would lie. These cases, and the case of the State vs. Stark, on the authority of which they were decided, are the only cases in which it has been held that, for an injury to the proprietary rights of the State, and not to her sovereign rights, she had any other means of redress than such as belonged to citizens generally by action. The remedy in these cases is partly civil and partly criminal. It has a criminal form, but in all other respects is precisely an action of trespass to try title.
The present case is an attempt to go one step further, and subject a citizen to an indictment for a trespass on property, in the proceeds of which, when sold, the State will be interested in a moiety.
The indictment is for a rescue, in taking out of the hands of Zachariah Norwood, a mare, which he had seized as the property of a slave, and which mare had been accordingly condemned, by a justice of the peace, after the master, the defendant, had been notified of the seizure, and had refused to take the oath required by law. A rescue is defined to be : “ When a man, lawfullyarrested and taken, is set at large wrongfully.” Com. Dig. Rescous. A. 272. This may be either a capital offence, or only a misdemeanor. In general, the rescue of a person arrested or confined for criminal matter, would be punished as the party rescued would be liable to be on conviction. The rescue of a person arrested or confined on civil process would be a misdemeanor. It consists in the high contempt for the law *293 which is manifested in preventing the operation of its process. So far there is no difficulty in defining a rescue, and pointing out its remedy. But it appears from the English books, that an indictment lies,“ if a rescous be made upon a distress, (fee. for the King.” Com. Dig. Rescous. D. 3, 273. Concede that this is law here, and it cannot aid this prosecution. For there has been no rescue of a distress either for “ rent, service, damage, feasant, debt, or tax to the State and these are the only cases contemplated by the authorities.
But I doubt whether this is or can be law in this State. In all cases of a distress for the State, if such a thing does exist, it must be made by some officer under process directed to him for that purpose, and his seizure, if legal, would vest the property in him; and he, for the State, could maintain an action for the rescue. To me it seems altogether unsuited to our institutions to put a man to answer on the criminal side of the court, and to punish him criminally, for the assertion of a right of property.
In the case of the State vs. Sotherlin. Harp. 414, it was held that “an indictment will not lie for rescuing goods, taken in execution, out of the possession of a constable.” That decision proceeded on the ground that it was a mere trespass, a private injury, and for it an adequate remedy was afforded to all concerned, in an action of trover or trespass, by the constable against the rescuer.
The reason and analogy of that case are, I think, directly applicable to this. The Act of 1740, P. L. 171, directs that it shall not be lawful for “ any slave to buy, sell, trade, traffic, deal or barter for any goods or commodities,” (except fruit, fish and garden stuffs, or to purchase for the use of his master or employer,) “ nor shall any slave be permitted to keep any boat, pettiauger or canoe, or to raise and breed, for the use of any such slave, any horses, mares, neat cattle, sheep or hogs,” upon pain of forfeitute thereof. The Act then provides that “ it shall and may be lawful for any person or persons to sieze and take away from any slave, all such goods, commodities, boats, pettiaugers, canoes, horses, mares, neat cattle, sheep or hogs, and to deliver them into the hands of any” justice of the peace *294 “ nearest to the place where the seizure shall be made j and the justice shall take the oath of such person who shall make any such seizure, concerning the manner of seizing and taking the same ; and if the said justice shall be satisfied that such seizure hath been made according to the directions of this Act, .he shall pronounce and declare the goods so seized to be forfeited, and shall order the same to be sold at public outcry, and the monies arising by such sale, shall be disposed of and applied as hereinafter directed.” The proviso excepts from the operation of this clause of the Act, any goods which come to the possession of a slave by “ theft, finding or otherwise, without the knowledge, privity,' consent or connivance” of.the owner, and directs such goods to be restored upon an oath to be taken by the party claiming them. The 54th section of the Act directs that “all fines, penalties and forfeitures, imposed or inflicted by this Act, and which shall be recovered, and are not before particularly disposed of, shall be applied and disposed of, one-half to be applied by the General Assembly for the use ” of the State, “ and the other half to him or them who will sue or inform for the same.” The injury done by the defendant, in the act complained of, is to the State and the captor or informer, in taking away the thing forfeited, and for which each are entitled to a moiety. The indictment is not, therefore, to redress an injury in which the State1 is alone interested: it presents a compound of private and State rights tobe redressed. But it is said, that unless this indictment be sustained, there will be no remedy for the act of the defendant. Let us examine this position, without conceding that it necessarily follows, even if it be true, that an indictment will lie. Take the case before us. The captor was in possession at the time the defendant took away the mare. What is to prevent him from sustaining trespass or trover l His possession is pri-ma facie evidence of property, and the defendant’s act of taking the mare out of his possession is either a legal trespass, or a conversion, as he may choose to consider it.— This would cast upon the defendant the proof of property ; and to that might be successfully replied the condemnation by the magistrate: and it is probable that a recovery must *295 necessarily follow it. This would appear to be a legal remedy, and that there is, therefore, no necessity to look for any other. But, although this might be enough for the case before us, yet it is advisable, in passing upon a case of novel impression, to see how the rule established by it will probably work in all probable cases of this class. Under the Act there may be three stages, at either of which, it is possible, the property may be taken away. 1st. After seizure, but before delivery to the justice : 2d. After the delivery to the justice, but before condemnation ; and 3d. After condemnation, but before sale. In all these cases, is the remedy by action sufficient 'l If it is, the rule that an indictment will not lie may be safely adopted. If the capture is lawful, the captor, or justice, before condemnation, may, upon their respective possessions, maintain either trespass or trover for the property, if it should be taken out of their possession. The order of condemnation by the justice, generally directs his constable to sell the property, and this would legally vest the property in him, so as to enable him to recover for any tortious taking of it out of his possession. The remedy by action is, therefore, perfect • and an indictment will not lie.
It was, however, urged that this was an obstruction of the law, and therefore an offence against public justice.— But it is not so : it is the assertion of a private right, in opposition to a partial right. It has operated, it is true, to defeat the sale ; but the operation of the law will still have effect. It is like taking property from a sheriff, or constable, after a levy, the sale of which is necessary to the correct execution of the process ; the law is violated, but not obstructed. The law has performed its functions by vesting the property in the officer for sale.
The motion to reverse the decision of the Judge below is dismissed.
Johnson, J. concurred.